IN THE UNITED STATES FEDERAL DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

LACRYSTAL HUBBARD, Individually, and on
Behalf of All Others Similarly Situated, &
KRISHA D. HOLLINGWORTH, Individually,
and on Behalf of All Others Similarly Situated                                    PLAINTIFFS

Versus                                                          Civil Action No. 2:18cv91-KS-MTP

GENERAL DYNAMICS INFORMATION
TECHNOLOGY, INC. and John or Jane Does #1-25                                       DEFENDANT

## COMPLAINT AND
## COLLECTIVE ACTION COMPLAINT

The Plaintiffs, LaCrystal Hubbard, ("Plaintiff Hubbard"), individually, and on behalf of all others similarly situated, and Krisha D. Hollingsworth ("Plaintiff Hollingsworth"), individually, and on behalf of all others similarly situated, sue the Defendant and file this Complaint and Collective Action Complaint and demand a Jury Trial against General Dynamics Information Technology, Inc., ("Defendant GDIT" or "Defendant") on the following grounds:

### STATUTORY BASIS

This action is also brought (1) under 42 U.S.C. § 1981 for race discrimination; (2) 42 U.S.C. § 1988 and 29 U.S.C. § 216(b), as to the claim for attorneys' fees; (3) under 29 U.S.C. § 158(a)(3) for Unfair Labor Practice based on the Defendant's terminating employment due to union activity; (4) under 41 U.S.C. § 351 for unpaid wages resulting from employee misclassification; and (5) claims pursuant to 28 U.S.C. § 1331 as they arise under the FLSA 29 U.S.C. § 203, et seq. This Court has authority to grant declaratory relief under the FLSA pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.

*JURY TRIAL DEMANDED*

## JURISDICTION AND VENUE

1. Subject matter jurisdiction is also appropriate for the Plaintiffs' claims under 41 U.S.C. § 351, 29 U.S.C. § 158(a)(3), and 42 U.S.C. § 1981, pursuant to 28 U.S.C. § 1331.

2. This court has personal jurisdiction because the Defendant resides/and or conducts business within this district.

3. Pursuant to 28 U.S.C. 1391(b), venue is proper in this district and division.

## PARTIES

4. Plaintiff LaCrystal Hubbard is an African-American female citizen of Hinds County, Mississippi, and was an employee of Defendant GDIT at their call center located in Hattiesburg, MS, from approximately June of 2013 to June of 2017.

5. Plaintiff Krisha Hollingsworth is an African-American female citizen of Forrest County, Mississippi, and was an employee of Defendant GDIT at their call center located in Hattiesburg, MS, from September 23, 2013, to March 22, 2018.

6. Defendant General Dynamics Information Technology, Inc. ("GDIT") is a wholly-owned subsidiary of General Dynamics Corporation, with his corporate headquarters located at 3211 Jermantown Road, Fairfax VA 22030, and customer service representative call centers located in Mississippi and other states, and may be served with process by serving its Mississippi registered agent, C T Corporation, 645 Lakeland East Dr., Suite 101, Flowood, MS 39232.

7. John or Jane Does #1-25 are unknown affiliates, subsidiaries, parent companies, owners, board members or officers of General Dynamics Information Technology who may have employed the Plaintiffs or others similarly situated, either directly or indirectly, and who may be responsible for unpaid overtime wages, or for other claims.

## FACTS

8. Plaintiff Hubbard was employed by Defendant GDIT from approximately June of 2013 until June of 2017.

9. Plaintiff Hubbard and others similarly situated worked over forty (40) hours in one week for one or more weeks while employed by Defendant GDIT.

10. Plaintiff Hubbard and others similarly situated worked overtime for which Defendant GDIT did not compensate them for on a routine basis over the last three (3) years.

11. Plaintiff Hubbard and others similarly situated were regularly issued paychecks by the Defendant GDIT.

12. At all relevant times, Defendant GDIT failed to properly compensate Plaintiff Hubbard and others similarly situated and/or pay Plaintiff Hubbard and others similarly situated at a rate of one and one-half (1 ½) times their regular rate of pay for hours worked in excess of forty (40) hours during one or more work weeks. As such, Defendant GDIT failed to comply with 29 U.S.C. §§ 201-209.

13. Plaintiff Hubbard and others similarly situated worked approximately 10-20 uncompensated overtime hours each week depending on the individual and the circumstances.

14. The nature of the work performed during the overtime hours included work done during the regular work day as well as duties outside of the employees' scope of their classification. Often the purpose of the overtime was for employees to complete their daily duties and meet daily quotas that they failed to meet in regular working hours. Failure to work overtime in order to meet said call quotas resulted in disciplinary measures being taken against the employee.

15. Plaintiff Hubbard and others similarly situated worked as customer service representatives but performed work beyond the scope of their classifications, which they were not appropriately compensated for.

16. Duties of base-level customer service representatives include telephone support for individuals enrolling in marketplace coverage related to the Affordable Care Act or, in some cases, for Medicare where initial enrollments were taken or adjustments were made in desired Medicare coverage, such as enrollments in "parts" available. The customer service representative job also includes providing information about enrollment, data entry, referral about available companies providing coverage in the area, and referral of issues to supervisors, managers or other personnel who are more trained to deal with particular issues raised by the circumstances of the individual caller when issues fall outside the training of the customer service representative.

17. Representatives with higher classifications work in quality control and training positions.

18. Employee responsibilities and duties are organized by "Tier" or status as a "Clerk" of various levels, including levels "I" and "II."

19. Plaintiff Hubbard initially worked as a base-level customer service representative and later worked in quality control.

20. The Plaintiffs and other similarly situated GDIT employees often performed work, during both regular hours and overtime hours, that was normally the responsibility and duty of higher-paid and "higher tier" employees for which they were not appropriately compensated.

21. Plaintiff Hubbard, as Quality Analyst, was required to perform the work of a Time Card Administrator, where she was required to audit lower-level customer service representatives time sheets for accuracy.

22. Her normal duties working in quality control were to monitor previously recorded phone calls and analyze the quality of assistance provided by lower level customer service representatives. Performing the work of a Time Card Administrator was outside the scope of Plaintiff Hubbard's duties and responsibilities.

23. Plaintiff Hubbard did not receive the additional and appropriate payment for such higher-classified work as required by law.

24. Plaintiff Hubbard also received additional training for which she did not receive an increase in pay.

25. At all material times to this action, Defendant GDIT was a covered employer as set out in Section 203 of the FLSA.

26. At all material times to this action, Plaintiff Hubbard and other's similarly situated were employees as that term is defined by the FLSA, 29 U.S.C. § 203(e).

27. At all material times to this action, Defendant GDIT was engaged in commerce within the meaning of the FLSA.

28. At all relevant times, Defendant GDIT had gross annual operating revenues in excess of $500,000.00, which is the threshold test for the "enterprise" requirement under the FLSA.

## COLLECTIVE ACTION ALLEGATIONS
### Wage-and-Hour Allegations

29. In addition to asserting her individual claim for unpaid wages and overtime pay, Plaintiff Hubbard brings this FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who previously worked or currently work for GDIT at customer service call centers who were not paid an overtime premium at a rate not less than one and one-half (1 ½) times the regular rate at which they are employed for all hours in excess of forty (40) hours in a work week. 29 U.S.C. § 207(a).

30. Plaintiff Hubbard brings this case as a collective action under the FLSA to recover unpaid minimum wage, liquidated damages, statutory penalties, attorneys' fees and costs, and damages owed to Plaintiff Hubbard and all similarly situated employees of Defendant GDIT.

31. This action is properly maintained as a collective action because the Plaintiff is factually similarly situated to the collective action members she seeks to represent.

32. Plaintiff Hubbard is personally aware that other persons who worked for Defendant GDIT were subject to the same practices and policies instituted by Defendant GDIT of requiring the potential collective action Plaintiffs to work more than 40 hours in a single work week and failing to pay them an overtime premium at a rate not less than one and one half (1 ½) times the regular rate.

33. Plaintiff Hubbard as well as other potential Plaintiffs worked more than forty (40) hours each week, completing tasks that went beyond *de minimis* activities.

## Unfair Labor Practice Allegations

34. In addition to her FSLA claims, Plaintiff Hollingsworth, and others who will be more particularly identified in a timely manner, were involved in communications and other activity to organize a union at GDIT in Hattiesburg.

35. Defendant GDIT terminated Plaintiff Hollingsworth's employment as well as the employment of others similarly situated for participating in union activities and attempting to organize.

36. Plaintiff Hollingsworth, in particular, was targeted for wearing a t-shirt that was similar to a union slogan.

## Employee Misclassification Allegations

37. The Plaintiffs and other potential collective action class members were paid according to their classification or "tier."

38. The Plaintiffs and other potential class members engaged in work beyond the scope of their classification and were not paid at the prevailing wage as required. The Plaintiffs and others similarly situated have claims for under-payment under federal law and contract.

## RACIAL DISCRIMINATION ALLEGATIONS

39. The Plaintiffs and other potential class members working in Defendant GDIT's

Hattiesburg, Mississippi call center are African-American and are members of a protected class.

40. The Plaintiffs and other potential class members working in the Hattiesburg Call Center were qualified for the positions that they applied for and held as employees at GDIT.

41. The Plaintiffs and other potential class members working in the Hattiesburg Call Center suffered an adverse employment action due to GDIT's intentional refusal to pay African American employees proper overtime compensation as required by the FLSA and their intentional misclassification of African American employees. The work force involved in making these claims is approximately ninety percent (90%) African-American, a recognized minority group, while supervisory employees and decision makers are primarily white individuals. The failure to pay primarily and disproportionately impacts African-Americans. Moreover, African-Americans were directed into low-level jobs where such impact occurs.

42. Plaintiff Hubbard, specifically, was subject to unwanted, intentional harassment based on her race, which created a work environment so hostile as to require her to seek medical and psychological treatment.

43. This harassment unreasonably interfered with Plaintiff Hubbard's work environment and performance and involved supervisors making discriminatory statements and treating Plaintiff Hubbard in a discriminatory manner in ways including but not limited to following her to the bathroom and constantly entering her cubicle to be sure she was working. This harassment was motivated by Plaintiff Hubbard's race and such harassment was not endured by other white employees.

44. The circumstances of adverse employment discriminatory action against the Plaintiffs and similarly situated Hattiesburg employees give rise to the inference of racial discrimination because the similarly classified white employees are treated more favorably.

45. The system used by the Defendant GDIT to unequally pay the Plaintiffs and other potential class members was disparate treatment and had a disparate impact on the Hattiesburg African-Americans employees such as to be discriminatory against the Plaintiffs and other potential class members.

46. Defendant GDIT's actions prevented the Plaintiffs and other potential class members from enjoying the full and equal protection and benefit that white employees enjoyed.

## CAUSES OF ACTION

### I. VIOLATION OF THE FAIR LABOR STANDARDS ACT

47. All previous paragraphs are incorporated as though fully set forth herein.

48. Three (3) years prior to filing of the complaint, Plaintiff Hubbard and others similarly situated were non-exempt employees and subject to the provisions of the FLSA as it pertains to whether or not Plaintiff Hubbard and others similarly situated were entitled to minimum wage and overtime pay for all hours over forty (40) hours worked in a given week.

49. The FLSA requires that employees be paid an overtime premium at a rate not less than one and one-half (1 ½) times the regular rate at which they are employed for all hours in excess of forty (40) hours in a work week. 29 U.S.C. § 207(a).

50. Plaintiff Hubbard and others similarly situated have not been paid overtime compensation under the FLSA at a rate of one and one-half (1 ½) times her regular rate of pay.

51. The acts of Defendant GDIT constitute a willful intentional violation of the FLSA and have caused damage to Plaintiff Hubbard and others similarly situated in the form of back pay from the Defendant's failure to provide overtime compensation in an amount to be determined at trial.

52. Although the Plaintiff Hubbard is unsure of the number at the time of filing this

Complaint, the precise number of persons comprising the FLSA Collection Action Class can be easily identified and located using the Defendant's timesheets, payroll, time records, and other business records.

53.   Given the composition and size of the potential FLSA collective action class, potential opt-in class members should be given notice of their right to join this suit as members of the class.

## II. VIOLATION OF 29 U.S.C. § 158(a)(3): UNFAIR LABOR PRACTICE

54.   The Defendant's willful conduct in terminating Plaintiff Hollingsworth and others' employment due to their participation in union activities constitutes a violation of 29 U.S.C. § 158(a)(3).

## III. VIOLATION OF THE SERVICE CONTRACT ACT: BACK WAGES & MISCLASSIFICATION

55.   The Defendant willfully misclassified employees where employees were engaged in higher paid work but were not paid at a higher rate.

56.   The Defendant's misclassification of employees amounts to a violation of the McNamara-O'Hara Service Contract Act of 1965, as amended (41 U.S.C. § 351 et seq.; "SCA").

## IV. VIOLATION OF 42 U.S.C. § 1981: RACE DISCRIMINATION

57.   All previous paragraphs are incorporated as though fully set forth herein.

58.   The Defendant's action in withholding overtime compensation and misclassifying employees was systematic and operated against African-Americans by both disparate impact and disparate treatment.

59.   The discriminatory conduct of the Defendant was also willful, wanton and intentional such that punitive damages should be assessed.

60. The Plaintiffs and other potential class members were a members of a protected class, were qualified for their position, and suffered adverse employment action which gave rise to an inference of racial discrimination.

61. Plaintiff Hubbard, specifically, suffered unwelcomed, racially-motivated discrimination, which created a hostile work environment so severe a reasonable person in her position would find her work environment to be hostile and abusive.

62. The Defendant's conduct constitutes race discrimination in violation of 42 U.S.C. § 1981.

63. Plaintiff Hollingsworth and other potential class members are entitled to attorneys' fees under 42 U.S.C. § 1988.

## WILLFUL VIOLATION

64. The Defendant's acts constituted a willful violation of the rights of the Plaintiffs and others similarly situated under the FLSA and in accordance with 29 U.S.C. § 255.

## TRIAL BY JURY

65. The Plaintiff respectfully demands a trial by jury.

**WHEREFORE, PREMISES CONSIDERED,** The Plaintiffs, individually, and on behalf of all other similarly situated, pray for the following relief:

(a) Certification of a collective action class consisting of the Plaintiffs and all other similarly situated GDIT employees who were not paid overtime compensation as required under the FLSA;

(b) Damages in the amount of Seventy-five Million and no/100 Dollars ($75,000,000.00), including the following:


      i.      Unpaid wages and liquidated damages in the maximum amount allowed by 29 U.S.C. §§ 201, *et seq.*, and the supporting regulations;

      ii.      Unpaid wages and liquidated damages allowed under 41 U.S.C. § 351;

      iii.      General compensatory damages for the 42 U.S.C. § 1981 claims;

      iv.      Attorneys' fees and expenses of the action requested pursuant to 42 U.S.C. § 1988, and 29 U.S.C. § 216(b) including expert fees and costs;

      v.      Pre-judgment and post-judgment interest; and,

(c)    Punitive damages for the 42 U.S.C. § 1981 claim resulting from the Defendant's malicious actions and reckless indifference to the Plaintiff's federally protected rights; and

(d)    Such other relief as this Court deems just and proper.

Respectfully submitted this the 24th day of May, 2018.

_____
Robin L. Roberts, Plaintiffs' Attorney

Robin L. Roberts (MB #5596)
Roberts & Associates
P. O. Box 1953
Hattiesburg, MS 39403
601-544-0950; Fax: 601-450-5395
Email: robin@rablaw.net