**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**LACRYSTAL HUBBARD**, *et al.*,                                                        **PLAINTIFFS**

**v.**                                                        **CIVIL ACTION NO. 2:18-CV-91-KS-MTP**

**GENERAL DYNAMICS INFORMATION
TECHNOLOGY, INC.**                                                        **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Conditional Certification of a Collective

Action Class [69] filed by Plaintiffs, LaCrystal Hubbard and Krisha D. Hollingsworth.  Defendant,

General Dynamics Information Technology, Inc. ("GDIT"), has responded [80, 81] and Plaintiffs

replied [84].  Having reviewed the parties' submissions and the record in this cause, as well as the

relevant legal authorities, and otherwise being fully advised in the premises, the Court finds that

the motion is not well taken and will be denied.

## I.        BACKGROUND

GDIT has operated contact centers at thirteen locations throughout the United States

pursuant to different government contracts. [81] at p. 2. One such contact center was located in

Hattiesburg, Mississippi. *Id*. The primary focus of this contact center was to support the Centers

for Medicare & Medicaid Services ("CMS") with the Federally Facilitated Marketplaces and

Medicare Program by taking calls from customers about these programs. *Id*. GDIT provided these

services through a contract known as Contact Center Operations ("CCO"). *Id*.  At the call centers

GDIT employed CCO agents, including Customer Service Representatives ("CSR"), Internal

Support Group ("ISG") employees, Quality Specialists, Instructors/Trainers, and Supervisors to support the contract and the customer. *Id*.

Plaintiffs, LaCrystal Hubbard ("Hubbard") and Krisha D. Hollingsworth ("Hollingsworth"), former employees of GDIT in various capacities, filed this lawsuit against GDIT as individuals and on behalf of others similarly situated, for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*.

## A.   Allegations of the Amended Complaint and FLSA Violations

In their Amended Complaint, Plaintiff Hubbard alleges[1] that she and others "similarly situated" worked over 40 hours in one week for one or more weeks while employed at GDIT, and GDIT did not compensate them on a routine basis and failed to compensate them at the proper rate for their overtime. [37] ¶¶ 10, 12.  Plaintiffs allege that "Hubbard and others similarly situated worked approximately 10-20 overtime hours each week depending on the individual and the circumstances." [37] ¶ 13.  Allegedly, the

> nature of the work performed during the overtime hours included work that was the responsibility of the employee at their regular rate of pay as well as work that was the responsibility of others who were paid at higher rates of pay. Often the purpose of the overtime was for employees to complete their daily duties and meet daily quotas . . . Failure to work overtime in order to meet said quotas resulted in disciplinary measures being taken against the employee.

[37] ¶ 14.

In their "Collective Action General Allegations," Plaintiff Hubbard alleges that she brings the action on behalf of herself and "all persons who previously worked or currently work for GDIT at customer service call centers *who were not paid an overtime premium* at a rate not less than one and one-half (1½) times the regular rate at which they are employed *for all hours in excess of forty*

---

[1]  Although there are two named Plaintiffs, most of the allegations mention only Hubbard.

*(40) hours in a work week.*" [37] at ¶ 19 (emphasis added). Plaintiffs then allege that Plaintiff Hubbard is factually similarly situated to the collective action members she seeks to represent and that she is "personally aware that other persons who worked for Defendant GDIT were subject to the *same practices and policies instituted by Defendant GDIT of requiring the putative collective action Plaintiffs to work more than 40 hours in a single week and failing to pay them an overtime premium . . . .*" [37] at ¶¶ 21, 22 (emphasis added). Plaintiff Hubbard also alleges that they worked "more than forty (40) hours each week, completing tasks that went beyond *de minimis* activities." [37] ¶ 23. Finally, Plaintiffs allege that they and others have held multiple positions at GDIT that were misclassified as being exempt from overtime pay and were denied overtime pay as a result of such misclassification. [37] at ¶ 25.

In the allegations particularly relating to alleged violations of the FLSA, Plaintiff Hubbard alleges that she and others were non-exempt and subject to the "FLSA as it pertains to whether or not Plaintiff Hubbard and others similarly situated were entitled to minimum wage and overtime pay for all hours over forty (40) hours worked in a given week." [37] ¶ 36. She goes on to allege that they are entitled to overtime pay and have not received it and that GDIT violated the FLSA by misclassifying her and others as exempt employees. [37] at ¶¶ 37-39.

**B.     Procedural History and Summary of Arguments**

Plaintiffs filed this action on May 24, 2018. [1]. There were a number of notices from opt-in plaintiffs filed early on in this matter. [8-18]. GDIT filed a Motion to Dismiss as to portions of the Plaintiffs' claims [21], and the Court dismissed Counts II and III with prejudice [34]. Following a case management conference on September 6, 2018, the Court entered an Initial Case Management Order allowing for a few months of discovery prior to the Plaintiffs having to file their Motion for Conditional Certification on or before the deadline of December 3, 2018 [36]. On

September 7, 2019, Plaintiffs filed an Amended Complaint [37]. In the ensuing months, there were depositions, document exchanges, as well as written discovery taken. After being granted a brief extension for filing this motion [66], Plaintiffs now seek conditional certification.

Plaintiffs seek to conditionally certify the following class:

All Hattiesburg, MS and Waco, TX General Dynamics Information Technology, Inc. ("GDIT") non-exempt employees who were denied overtime pay and/or straight time pay as a result of policies, procedures, and customs and practice related to security and recording time worked.

[69] at ¶ 4.

In support of their motion, Plaintiffs argue that Plaintiffs and other similarly situated non-exempt employees were denied overtime pay and/or straight pay as a result of GDIT's policies and practices: namely that both GDIT's security procedures and GDIT's time recording and time reporting policies/custom and practice resulted in uncompensated time worked. [70] at pp. 5, 16. Plaintiffs submitted numerous documents: GDIT's CCO Secure Floor Policy [69-3]; the written job description for a Quality Monitor [69-15]; HCSD Contact Center Non-Exempt Beginning and End of Day Guideline for Use with ETS NETT [69-6]; excerpts from the depositions of Hubbard [69-1] and Hollingsworth [69-2], and Joseph Doctor, the 30(b)(6) representative for GDIT [69-4, 5]; and declarations from the following individuals: Krisha Hollingsworth [69-7], Cedric Dallas [69-8], Alexandra Disney [69-9], Kenya J. Polion-McNaire [69-10], Whitney Ware [69-12], Carl E. Johnson [69-12], Betty Lee Young [69-12], and Rosa Belara Young [69-12]. Plaintiffs also submitted a proposed notice to go to potential class members [69-13] and proposed notice of consent to join [69-14].

GDIT denies liability for violations of FLSA and presents a host of arguments in opposition to conditional certification.[2] In their opposition memorandum, GDIT asserts the following arguments: (1) Plaintiffs cannot obtain conditional certification of claims that are not actionable[3] and that the class to be certified is not supported by the allegations of the Amended Complaint; (2) Plaintiff Hubbard is not yet a party to the collective action and therefore not a proper class representative;[4] (3) Plaintiffs cannot show that they are similarly situated; (4) Plaintiffs have not shown sufficient interest in joining in the lawsuit;[5] (5) Some potential opt-in plaintiffs are not viable parties. [81]. GDIT also submitted a host of documentary evidence for the Court's consideration in determining whether Plaintiffs have carried their initial burden for issuing notice to a potential class of aggrieved employees. [80] Ex. 1-27.

## II.     DISCUSSION

### A.      General Background of the FLSA

Enacted in 1938, the FLSA established a minimum wage and a rate for overtime compensation for each hour worked in excess of forty (40) hours in each workweek. 29 U.S.C. §§ 206(a)(1), 207(a)(3). An employer who violates these provisions may be held civilly liable for

---

[2] The Court finds that many of these arguments are premature to the extent they address the merits of the claims. Given the Court's denial of conditional certification, GDIT is free to raise these issues in a subsequent dispositive motion on the named Plaintiffs' claims.

[3] GDIT cites to a Fourth Circuit case in support of its contention that when claims fail as a matter of law, certification is not appropriate. [81] at p. 11 (citing *In re Family Dollar FLSA Litig.*, 637 F.3d 508 (4th Cir. 2011)). However, the *Family Dollar* case involved an appeal of a grant of summary judgment on FLSA claims, and in affirming that decision, the Fourth Circuit simply found it unnecessary to address whether the district court properly refused to certify the action as a collective action. *Id.* at 519. There have been no motions for summary judgment in this case, and the Court declines to engage in the summary judgment type of analysis GDIT seeks at this stage. This argument is better made when addressing the merits of the case becomes appropriate.

[4] LaCrystal Hubbard subsequently filed her Notice of Consent to Join as Opt-in Plaintiff on January 14, 2019 [82].

[5] The Court will not address this argument because the contention that there are too few potential plaintiffs to permit conditional certification is not relevant as there is no numerosity requirement for conditional class certification under § 216(b). *See Townsend v. Central Pony Express, Inc.*, No. SA–17–cv–00552–OLG 2018 WL 2432962, at *3 n.5 (W.D. Tex. Jan. 26, 2018) (citing *Cantu v. Vitol, Inc.*, No. H–09–0576, 2009 WL 5195918, at *5 (S.D. Tex. Dec. 21, 2009); *Roberson v. Danny Ontiveros Trucking*, No. 08–0552, 2008 WL 4809960, at *4–5 (E.D. Cal. Nov. 3, 2008).

backpay, liquidated damages, and attorney's fees. 29 U.S.C. § 216(b). However, the FLSA did not define "work" or "workweek."

As a result, as explained in the case of *IBP, Inc. v. Alvarez*, the United States Supreme Court interpreted those terms broadly, defining "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." 546 U.S. 21, 25 (2005) (citations omitted). Similarly, the high court defined "the statutory workweek" to "includ[e] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *IBP*, 546 U.S. at 25 (citations omitted). When such expansive definitions were applied, courts issued rulings that found the time spent traveling between mine portals and underground work areas and the time spent walking from timeclocks to work benches was compensable as part of the workweek. *Id.* at 26. (citations omitted). These decisions flooded the courts with litigation, and Congress responded by enacting the Portal–to–Portal Act. *Id.*

The Portal–to–Portal Act exempted employers from liability on future claims for two categories of work-related activities, which had been previously been treated as compensable under the case law: walking on the employer's premises to and from the actual place of performance of the principal activity of the employee, and activities that were preliminary and postliminary to that principal activity. *Id*. at 27. Part III of the Portal–to–Portal Act entitled "Future Claims," provides in relevant part:

> (a) Except as provided in subsection (b) [which covers work compensable by contract or custom], no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, ... on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after the date of the enactment of this Act—

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

As mentioned, the FLSA requires covered employers to pay a minimum wage to employees and overtime compensation to non-exempt employees for hours they have worked in excess of the defined maximum hours. 29 U.S.C. §§ 206, 207(a). Claims against employers who have violated either the minimum wage or the overtime compensation requirements under 29 U.S.C. § 216(b) are typically called wage and hour claims.

In some cases, despite the exemptions in the Portal-to-Portal Act, employees continue to seek recovery under the FLSA for certain preliminary and postliminary work activities that would seem to be exempted under the Portal-to-Portal Act by arguing that these activities are compensable because they are "an integral and indispensable part of the principal activities." *See, e.g., Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). Examples of such claims are those for having to don and doff specialized protective gear, *see Steiner* and *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), and having to participate in postliminary security screenings, *see Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014).

**B.      Legal Standard for Certification of Collective Action**

The FLSA permits a court to order an action to proceed as a collective action on behalf of others similarly situated. The statute provides:

> An action ... may be maintained ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Thus, unlike a class action filed under Federal Rule of Civil Procedure 23(c), a collective action under § 216(b) provides for a procedure to "opt-in," rather than "opt-out." *Roussell v. Brinker Int'l, Inc.*, 441 Fed. Appx. 222, 225 (5th Cir.2011) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008)). District courts have discretion in deciding whether and how to provide "timely, accurate, and informative" notice to prospective plaintiffs. *Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

**1.      This Court utilizes the *Lusardi* approach.**

In determining whether class certification is appropriate, the Fifth Circuit has not specifically ruled on how to proceed nor has it specifically addressed the meaning of "similarly situated" under the FLSA. *Clarke v. Convergys Customer Management Group, Inc.*, 370 F. Supp. 2d 601, 604, (S.D. Tex. 2005). Notwithstanding, the majority of courts within this circuit have adopted the *Lusardi* two-stage approach.[6] *See, e.g.*, *Santinac v. Worldwide Labor Support*, 107 F. Supp. 3d 610, 614 (S.D. Miss. 2015) (using *Lusardi* approach); *Vanzzini v. Action Meat Distribs., Inc.*, 995 F. Supp. 2d 703, 719 (S.D. Tex. 2014) (same); *Harris v. Hinds County*, No. 3:12-cv-542,

---

[6]  This District has previously noted that "[t]he *Lusardi* method  is recognized as 'the favored approach by courts in the Fifth Circuit.'" *Harris v. Hinds County*, No. 3:12-cv-542, 2014 WL 457913, at *2 (S.D. Miss. Feb. 4, 2014). The other approach was set forth in *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990), which utilized a Rule 23 class action certification analysis. *See Mooney*, 54 F.3d at 1214.

2014 WL 457913, at *2 (S.D. Miss. Feb. 4, 2014) (same); *Mateos v. Select Energy Servs.*, LLC, 977 F. Supp. 2d 640, 643 (W.D. Tex. 2013) (same); *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011) (same); *Marshall v. Eyemasters of Tex., Ltd.*, 272 F.R.D. 447, 449 (N.D. Tex. 2011) (same); *Strickland v. Hattiesburg Cycles, Inc.*, No. 2:09-cv-174, 2010 WL 2545423 (S.D. Miss. June 18, 2010).

The two stages of the *Lusardi* approach are the "notice stage" and the "decertification stage" or "merits stage." *See Mooney v. Aramaco Svcs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995);[7] *Harris*, 2014 WL 457913 at *2. The first step in the *Lusardi* approach is to decide whether to issue notice to potential class members. *See Mooney*, 54 F.3d at 1213-14. At the notice stage, the district court "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010). Such decision is solely within the district court's discretion and is not mandatory. *See Strickland*, 2010 WL 2545423 at *2.

Upon such conditional certification, the potential plaintiffs are given notice and the opportunity to opt in. *See Clarke*, 370 F. Supp. 2d at 604. "The second stage occurs when and if the defendant files a motion for decertification, 'after discovery is largely complete and more information on the case is available.'" *Tzib v. Moore Feed Store, Inc.*, No. 3:14-cv-65, 2015 WL 2415530, at *3 (N.D. Miss. May 21, 2015) (quoting *Case v. Danos and Curole Marine Contractors, L.L.C.,* 2015 WL 1978653 (E.D. La. May 4, 2015). At the "merits stage," the defendant can challenge the class and the court must "again make a factual determination as to

---

[7] *Mooney* involved claims under the ADEA, which in 29 U.S.C. §626(b) incorporated Section 216(b) of the FLSA for collective actions. *See* 54 F.3d at 1213. The court discussed the competing *Lusardi* and Rule 23 approaches to class certification, but found it "unnecessary to decide which, if either, of the competing methodologies should be employed in making an ADEA class certification decision" and left that inquiry "for another day." *Id.* at 1216.

whether the opt-in plaintiffs are similarly situated; however, the scrutiny applied in the second state is much more rigorous than that of the notice stage." *Strickland*, 2010 WL 2545423 at *2. "Decertification scrutiny requires the Court to look beyond the pleadings and affidavits; instead the Court must determine whether the potential plaintiffs are similarly situated in light of all the information gathered during post-opt-in discovery." *Id*.

### 2. The Plaintiff's burden at the notice stage

Because this case is presently in the notice stage, we look particularly at what the Plaintiff must show with regard to being similarly situated.[8] The standard at this stage is not particularly stringent, but "it is by no means automatic." *Lima v. Int'l Catastrophe Solutions, Inc*., 493 F. Supp. 2d 793, 798 (E.D. La. 2007). As this Court has noted, because the request for certification typically comes early in the litigation, it is usually based on the pleadings and attached affidavits with no discovery having been conducted. *Strickland*, 2010 WL 2545423 at *2; *McKnight*, 756 F. Supp.2d at 802. However, in this case, there has been more, including depositions, written discovery and some document production. The fact that some discovery has been conducted does not change the Plaintiffs' burden. *See McKnight*, 756 F. Supp. 2d at 802. However, this Court will consider that fact when determining whether Plaintiffs have met their burden after having been afforded some time for discovery.

Without specific direction from the Fifth Circuit regarding the particular showing needed at this stage in an FLSA setting, courts often rely on the Fifth Circuit's recitation of the *Lusardi* approach in the case of *Mooney v. Aramaco Services Co.*, s*upra*, noting that "[a]t the notice stage, 'courts appear to require nothing more than substantial allegations that the putative class members

---

[8] "The plaintiffs bear the burden of proof on all issues pertinent to the instant motion." *Conerly v. Marshall Durbin Co.*, No. 2:06-cv-205, 2007 WL 3326836 at *8 (S.D. Miss. Nov. 6, 2007).

were together the victims of a single decision, policy, or plan infected by discrimination." *Lima*, 493 F. Supp. 2d at 798 (citing *Mooney*, 54 F.3d at 1214 n. 8). Because *Mooney* was decided in the ADEA context, it mentions discrimination, but "discrimination" is irrelevant under the FLSA. Thus, a better statement of the standard in the FLSA setting is that "[p]laintiffs are similarly situated when they suffer from a single, FLSA-violating policy and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Gaffers v. Sitel Worldwide Corp*., No. 3-16-0128, 2016 WL 3137726 at *2 (M.D. Tenn. June 6, 2016) (citing *Watson v. Adv. Distrib. Servs., LLC*, 298 F.R.D 558, 561 (M.D. Tenn. 2014)); *see also Harris*, 2014 WL 457913 at *2 ("The lenient standard requires at least a modest factual showing sufficient to demonstrate that the plaintiff and potential plaintiffs together were victims of a common policy or plan that violated the law."); *O'Brien v. Ed Donnelly Enters., Inc.,* No. 2:04-cv-85, 2006 WL 3483956 at *3 (S.D. Ohio Nov. 30, 2006) ("Plaintiffs must demonstrate that the Defendants had a common policy or plan in violation of the FLSA that negatively impacted the original and opt-in Plaintiffs.")

Some courts, including this one, have also found that at the notice stage, in addition to the foregoing, that "a plaintiff must make a minimal showing that (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *See, e.g., Santinac*, 107 F. Supp. 3d at 615; *McKnight*, 756 F. Supp. 2d at 801; *Harris*, 2014 WL 457913, at * 2; *Morales v. Thang Hung Corp.*, No. 4:08–2795, 2009 WL 2524601, at *2 (S.D. Tex. Aug.14, 2009). This lenient standard requires at least a "modest factual showing" that the plaintiffs are "similarly situated" to the other employees named in the proposed class. *Harris*, 2014 WL 457913, at * 2; *Vargas v. HEB Grocery*

*Co., LP*, No. SA-12-CV-116-XR, 2012 WL 4098996, at *2 (W.D. Tex. Sept. 17, 2012) (citing

*Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)); *see also Pedigo v. 3003 S.*

*Lamar, LLP*, 666 F. Supp. 2d 693, 698 (W.D. Tex. 2009).

In wage and hour cases, this means the proposed class must be "similarly situated in terms

of job requirements and similarly situated in terms of payment provisions." *Mathis v. Stuart*

*Petroleum Testers, Inc.*, No. 5:16-CV-094-RP, 2016 WL 4533271, at *2 (W.D. Tex. Aug. 29,

2016) (citing <u>*Pedigo*</u>, 666 F. Supp. 2d at 698); *Harris*, 2014 WL 457913, at * 2 (explaining that

the positions compared need not be identical but similar with respect to job requirements and pay

provisions). A plaintiff must show that the proposed class members "performed the same basic

tasks as part of their employment and were subject to the same pay decisions, policies, or

practices." *Mathis,* 2016 WL 4533271, at *2  (citing *Tice v. AOC Senior Home Health Corp.*, 826

F. Supp. 2d 990, 996 (E.D. Tex. 2011)). Employees need not be "similarly situated in each and

every aspect of their employment," but rather there must be simply "some identifiable facts or

legal nexus" binding together the claims "so that hearing the cases together promotes judicial

efficiency." *Id.* (internal quotations omitted). The ultimate purpose of the similarly situated inquiry

is to determine whether "hearing the cases together promotes judicial efficiency." *McKnight*, 756

F. Supp. 2d at 801.

### C.    Analysis

Plaintiffs seek to conditionally certify the following class:

All Hattiesburg, MS and Waco, TX General Dynamics Information Technology, Inc. ("GDIT") non-exempt employees who were denied overtime pay and/or straight time pay as a result of policies, procedures, and customs and practice related to security and recording time worked.

[69] at ¶ 4.

Again, at this stage the Court is only concerned with whether the potential plaintiffs in this class are similarly situated. *See Lynch v. United Svcs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.") Unfortunately the Plaintiffs focus almost exclusively on the merits of the case and spend virtually their entire brief arguing how the security measures and issues timekeeping resulted in uncompensated time, which is premature.[9] *See Longcrier v. HL–A Co.*, 595 F. Supp. 2d 1218, 1240–41 (M.D. Ala. 2008) ("To the extent [the parties] would now argue the merits of the case, such debates are premature and inappropriate.") Consequently, their burden at this notice stage is lost in the fray. Both parties' arguments as to the merits of the claims are best left for another day. For now, as it pertains to the current relevant analysis, GDIT provides some, but Plaintiffs do absolutely no analysis to show the Court how these plaintiffs are similarly situated, even with an extremely low burden. The Court will now address these various standards and explain how, regardless of which particular of the standard is used, Plaintiffs have failed to satisfy their burden.

### 1. A Custom, Policy, or Plan that Violated the FLSA

As previously noted, one standard at the notice stage "requires at least a modest factual showing sufficient to demonstrate that the plaintiff and potential plaintiffs together were victims of a common policy or plan that violated the law." *Harris*, 2014 WL 457913 at *2 (citation omitted). Plaintiffs seek to certify a class of individuals who were subject to a security screening and timekeeping policies that resulted in overtime pay and/or straight time pay. GDIT argues that certification should be denied because Plaintiffs should be held to their pleadings, and these claims

---

[9]  Indeed, Plaintiffs spend 11½ pages of their memorandum arguing that the security procedures are an indispensable part of the principal activities of the employees' jobs and another 6 ½ pages arguing that the timekeeping practices resulted in uncompensated time. [70] at pp. 5-16; 16-22.

were not pled. Plaintiffs argue in reply that they are not required to provide that much detail, claiming that in Paragraphs 19, 20, and 36 the Plaintiffs claim minimum wage and overtime pay, which is sufficient. The Court agrees with the Defendant.

### a. Plaintiffs did not plead that security or timekeeping policies resulted in straight time/overtime pay.

Defendants cite to cases from the District of Columbia and the Middle District of Florida for the proposition that the proposed class must match the allegations in the complaint. [81] at p. 12 (citing *Stephens v. Farmers Rest. Group*, 291 F. Supp. 3d 95 (D.D.C. 2018); *Herra v. U.S. Serv. Indus., Inc.*, 2013 WL 1610414 (M.D. Fla. Apr. 15, 2013). The Court finds these cases persuasive, and in its discretion finds that certifying a class that was never pled would result in unfair prejudice to the Defendant because GDIT has been unable to test the sufficiency of such a pleading. Again, Plaintiffs seek to certify a class who were denied overtime pay and/or straight pay as a result of GDIT's policies relating to security and recording time worked. There are no allegations in the Amended Complaint that would support such a class of plaintiffs.

First, Plaintiffs never alleged any claim for "straight time." [10] The Amended Complaint contains no allegations regarding a violation of the FLSA for GDIT's failure to comply with the minimum wage requirements or failing to pay "straight time." Reviewing the allegations of the Amended Complaint as a whole, it is clear that the only alleged FLSA violation stems from an alleged failure to pay overtime. *See supra* at Section I(A); [37] at ¶¶ 9, 10, 12, 13, 14, 19, 22, 23, 25, 38. Contrary to Plaintiffs' assertions, Paragraphs 19, 20, and 36 do not support any claim for a

---

[10] The Court declines to address at this time whether "straight time" is even compensable under the FLSA.

minimum wage or "straight time" claim, particularly not with regard to any policy/procedure/custom and certainly not due to security screenings or timekeeping procedures. Paragraphs 19, 20, and 36 merely *include* the words "unpaid wages" and "minimum wage,"[11] but there are no factual allegations that allege that Plaintiffs were not paid a minimum wage.

Second, as for the overtime violations, there are no allegations of any policies, procedures, and customs and practice relating to security or timekeeping procedures purportedly resulting in uncompensated overtime. The only mention of a "policy" is when Plaintiffs allege that GDIT instituted a policy of *requiring the Plaintiffs to work more than 40 hours a week* and failing to pay them the proper overtime rate. [37] at ¶ 22. Plaintiffs particularly alleged that the nature of the overtime work was the employee's regular work as well as work that was the responsibility of others who were paid a higher rate and that the purpose of the overtime work was to "complete their daily duties" and "meet daily quotas." [37] at ¶ 14. This theory of overtime recovery is not even mentioned in the class sought to be certified. Not one declarant mentions having to meet quotas.

Plaintiffs have changed course completely and now seek either straight pay or overtime compensation for various tasks performed off the clock and due to having to go through security screenings. None of this was pled in the Amended Complaint. In fact, in their Reply, Plaintiffs admit that it was only during the course of this initial discovery period that they learned of what they believe to be compensable work that was "integral and indispensable to the job duties Plaintiffs, and others, were hired to perform" that went unpaid. [85] at p.1. It begs the question— what was the original basis for the collective action?

---

[11] Paragraph 36 alleges that Plaintiffs were "subject to the provisions of the FLSA as it pertains to whether or not . . . [Plaintiffs] were entitled to minimum wage and overtime pay for all hours over forty (40) hours worked in a given week." [37]. This does not support any common policy that resulted in a minimum wage/straight time violation.

Third, not only does the Amended Complaint fail to mention any particular plan or policy relating in any way to security procedures or procedures for recording time, but also there are no allegations to support a theory regarding "integral and indispensable work." Apparently, Plaintiffs are now attempting to bring a claim for those preliminary and postliminary activities that are typically excluded under the Portal-to-Portal Act, when GDIT was never on notice of such a claim. To now proceed with a collective action on this new theory would be patently unfair to GDIT. *See Stephens*, 291 F. Supp. 3d at 115. Accordingly, because the proposed class goes beyond the scope of the allegations of the Amended Complaint, in its discretion, the Court finds that the motion shall be denied. *See Herrera v. United States Serv. Indus., Inc.*, No. 2:12-cv-258, 2013 WL 1610414 (M.D. Fla. 2013) (denying certification when neither the description of group of employees to be certified nor the alleged FLSA violations matched those described in the Complaint).[12]

> **b.      Plaintiff still failed to show that potential plaintiffs together were victims of a common policy or plan that violated the law.**

Regardless of the disparity between the proposed class/claims and the allegations of the Amended Complaint, even under these unpled new theories of liability, Plaintiffs still fail to carry their burden to show that others are similarly situated with regard to the security screening and timekeeping procedures.

> **i.      Security screening**

Because the Plaintiffs have clearly alleged only overtime violations, even if the security screening was a policy that allegedly resulted in uncompensated overtime, what is conspicuously missing from each of the declarations submitted is any assertion that either of these policies resulted in uncompensated overtime. Plaintiff Hollingsworth and Cedric Dallas both averred that

---

[12] This case is particularly persuasive because the Eleventh Circuit has also adopted the *Lusardi* two-stage approach described in *Mooney v. Aramaco Services Company. See Herrera*, 2013 WL 1610414, at *1.

failure to follow security protocols would subject an employee to discipline and possibly termination, but never state that it resulted in uncompensated overtime. [69-7]; [69-8]. The declarants make no mention of working overtime at all.  It is not enough to simply show there was some common policy in place, such as a security screening—it must result in an FLSA violation. Having to work overtime as a result of complying with this policy could arguably be implied if the declarants at least had stated that they were full-time, 40-hour-a-week employees, but not one makes such a statement.[13] In fact, they make no mention of their employee status or allege a lack of overtime compensation at all.

Furthermore, the Court cannot assume that any of the declarants are full-time employees because there has been evidence submitted that CSRs can be, indeed GDIT claims that many are, part-time.[14] If these declarants are indeed part-time, then there would be no overtime violation, and they would be looking to recover simply for work they claim should be uncompensated, which again goes beyond the claims in the Amended Complaint and not proper. What is more, the declarants do not address whether they are non-exempt or exempt but misclassified, which is important given that Amended Complaint makes a FLSA misclassification claim.  Thus, Plaintiffs have failed to establish that they are similarly situated or even fall into the class seeking to be conditionally certified because they fail to establish a common policy relating to security procedures that violates the FLSA.

---

[13] Interestingly, Hollingsworth is the only one who provides any estimate of the time necessary to go through the security screening, and she states that it takes approximately 3-4 minutes. [69-2] 75:1-4.  Plaintiffs would have to all be full-time employees, getting exactly 40 hours consistently, for 3-4 minutes a day to result in any overtime, and even then, it would only be nominal. The named Plaintiffs do not aver, or in any way make any showing that they are full-time, 40-hour-a-week employees, nor do any of the potential plaintiffs except for Betty Lee Young and Rosa Belara Young in their affidavits [69-12], the latter of whom GDIT claims was never a GDIT employee. [80-1] at ¶ 6.
[14] Plaintiff testified she led a team of part-time CSRs.[80-10] 42:7-14.  GDIT's Joseph Doctor avers that most CSRs do not work full-time. [80-2] ¶ 13.

### ii.     Timekeeping Procedures

With regard to timekeeping, the declarations submitted again fail to establish a coherent common policy or plan that resulted in FLSA violations.  In their memorandum, Plaintiffs readily acknowledge that GDIT has written policies for beginning and end of day activities which told employees how to enter their time. *Id.* (citing to [69-5], a GDIT document titled "HCSD Contact Center Non-Exempt Beginning and End of Day Guideline for Use with ETS NETT Employee View"). This written policy mandates that the "first work activity of the day" is the act of pressing "CTRL+ALT+DEL" on the computer and at the end of a shift to restart the computer to ensure that it is powered on for the next shift. *Id.* Per the policy, employees are to log out and "record all time worked *and the estimated time it takes to complete the end of shift activities*." [70] at p. 17; [69-5] (emphasis added).[15]

Unfortunately for Plaintiffs they have failed to identify any common policy to the contrary, any directive from GDIT to violate the policy, or any widespread practice of GDIT of its changing employee time worked to deduct for any particular activity.  Instead, the declarations vary with regard to the allegations of timekeeping. It does not appear that the policy itself results in overtime but rather the unique scenarios that can arise due to other circumstances. For example, several employees noted that if technical problems or computer updates occurred, it would keep them longer than anticipated. [69-9] Disney Dec.; [69-10] McNair Dec.; [69-11] Ware Dec.[16]  Technical problems and computer updates are random occurrences that do not stem from a GDIT policy, practice or decision. Plaintiffs point out that Hubbard testified that some computers would be

---

[15] Interestingly, neither of the named Plaintiffs or nor any potential plaintiff/declarant accounts for how they would incur overtime if they are allowed to estimate the time it takes to complete their end-of-shift activities.

[16] The exact claim is: "Employees were required to wait until the computer restarted before they left, and this often resulted in additional uncompensated time if the computer experienced any technical problems or updates had to be installed." [69-9, 10, 11].

completely shut down and would require rebooting before they could be used. [70] at p. 17. This is a single allegation not common to all plaintiffs and is merely a random occurrence that again does not stem from a GDIT policy, procedure, or decision.

Plaintiffs also claim that Hubbard testified she and other employees were told to only submit the amount of time they clocked on their phones and were told to take time off their time sheets. [70] at p. 18. However, upon review of the testimony, Hubbard actually testified vaguely that "they told us that we couldn't clock time before we logged into the phone. . . . The only time that we can clock is when we're at our desk and actively monitoring. And we can only be in that clock on that phone for eight hours and nothing past that. And if we did, they made us take that time out of our time sheet. And there were repeated e-mails sent to us telling us to take that time out of our time sheet." [69-1] at 70-71. While it appears Hubbard is trying to articulate a GDIT policy regarding timekeeping, without getting into the merits of whether it is a sufficient FLSA violation claim, the bottom line is there is not one declarant who claims that they were told to take time out of their time sheet. The emails Hubbard testified to were not submitted. Thus, there does not appear to be a common plan or policy in this regard that warrants conditional class certification.

In addition, Hubbard claims that she did trainings off the clock and would be stopped by co-workers and asked question relating to work prior to her logging on to her phone. [70] at p. 18; [69-1] 72:9-25; 110:17-25. Again, these are not situations common to all potential plaintiffs such that they were all victims of a common policy, particularly that resulted in an FLSA violation. Hubbard simply complains that she did not get paid for it. She testified she got paid for the training if she was clocked into her phone and did the training during that time. [69-1] 110:5-16. She just would not get paid if she performed her training while off the clock, and she does not claim that

she was required to do so.[17] There are also no other potential plaintiffs that claim they are stopped by co-workers and asked questions prior to logging in. In any event, while being asked questions may be frequent for Hubbard, it is a purely random occurrence and not one that emanates from any GDIT policy, procedure, or decision.

Plaintiffs claim that other employees suffered from the same uncompensated time worked. However, other potential plaintiffs present a host of varying scenarios. For example, Carl E. Johnson claims that he is "personally aware of GDIT's practice and procedure of lowering performance scores for employees taking breaks at what GDIT deemed to be inappropriate times" and that he often stayed on the phone and continued to take calls after his shift ended, which resulted in uncompensated time worked." [69-12]. First, lowering performance scores has nothing to do with pay violations. Second, Johnson does not indicate why he stayed on the phone and continued to take calls, that he was ordered to do so, or that GDIT management was aware he was doing so. Similarly, Betty Lee Young and Rosa Belara Young claimed to be required to take calls at the end of her shift that resulted in uncompensated time, yet neither explains who or what required them to do so. [69-12]. The named Plaintiffs never made such claims, and these three are the only three that mention taking additional calls.

There are even more varied claims. Three opt-in plaintiffs make claims, but not the same claims, about bathroom breaks. Alexandria Disney declares that *on frequent occasions* if her bathroom break went beyond four minutes, her supervisor would log her out of her phone which

---

[17] The only other employee to discuss training is McNair, who claims employees were required to complete their training at the beginning of their shift, before the allotted time for taking calls. She often would not finish her training during this time due to assisting other CSRs. In order to finish her training, she was instructed on multiple occasions to log out of her phone and timekeeping system and then complete the training after her shift, which she was not paid for. [69-10]. It appears that if she were to complete the training at the beginning of the shift, she would have been paid, but she "often" would not finish because she was "assisting other CSRs." *Id*. Again, this not a GDIT policy, practice, or decision that allegedly violated FLSA and resulted in widespread unpaid overtime as a result.

resulted in uncompensated time. [69-9]. Betty Young and Rosa Belara Young claim that they are aware of GDIT's practice of docking time from paychecks for staying in the bathroom longer than the time allowed by GDIT management. [69-12]. There are complaints about GDIT's calculation of holiday pay, as well as not being assigned a specific work station and having to spend time trying to find an open phone and computer to use. [69-9]; [69-11].

All of these circumstances are simply too individualized to warrant a collective action. As the Plaintiffs clearly acknowledge in the Amended Complaint, the alleged FLSA overtime violations *depend on the individual and the circumstances*. [37] at ¶ 13 (emphasis added). Likewise in their Memorandum, Plaintiffs assert that "the Plaintiffs and other similarly situated employees were subject to the same policies, procedures, and custom and practice which lead to employees working uncompensated time in the form of straight pay and/or overtime pay, *depending on the circumstances of the employees' hours worked*." [70] at p. 22 (emphasis added). When the determination of an FLSA violation depends on each individual's circumstances, it does not warrant a collective action. *See Harris*, 2014 WL 457913 at *2 (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 508 (M.D. La. 2005); *see also Tolentino v. C & J Spec–Rent Servs. Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010) (explaining that if the court finds that the action arises from circumstances purely personal to the plaintiffs, and not from any generally applicable rule, policy, or practice, it may deny the conditional certification). In its discretion, the Court finds there are too diverse and unique circumstances to warrant certification for timekeeping procedures.

In support of their motion, Plaintiffs rely on the cases of *Beasley v. GC Services, LP* and *Clark v. Convergy's Customer Management Group, Inc*., which are both "call center" cases.[18] However, neither of these cases assist Plaintiffs' cause because, although those cases also involve allegations relating to timekeeping policies, it is the factual evidence that is lacking in this case.

In *Beasley*, the plaintiffs came forward with substantial allegations that they and the other members of the proposed collective action were required to perform certain work without getting paid for it. 270 F.R.D. 442, 444 (E.D. Mo. 2010). The court found the plaintiffs had adequately alleged that they and the other employees they sought to represent were required to perform similar work without pay and had adequately described the work in sufficient detail so that others may be identified and notified. *Id*. at 444-445. That is not the case here.

Plaintiff Hubbard did not even submit a declaration, and the deposition excerpts do not establish how she is similarly situated to other employees regarding any work she allegedly was not paid for. She complains about not being paid overtime as a quality monitor and goes on to complain about tasks she does not get paid for, namely walking through security and being stopped by other employees to ask her questions. There is no comparison of her work or situation to others.[69-1]. Plaintiff Hollingsworth's declaration does nothing to compare herself to the other employees either. The excerpts submitted from her deposition also do not attempt to explain, much less establish, how she is similarly situated to any other employee. [69-2]. Neither Hubbard or Hollingsworth discuss in detail any timekeeping policies, nor do they aver that they are subject to

---

[18]  Plaintiffs also mention *Faust v. Comcast Cable Communications Management, LLC*, 2011 WL 5244421 (D. Md. 2011) but only with regard to arguing the merits of an anticipated defense by GDIT. [70] at p. 20. Such argument is premature at this stage.

any particular GDIT written policies or procedures. Based on the lack of detail and comparison in this case, *Beasley* does not support Plaintiffs' attempt to conditionally certify a class.

Similarly in the *Clarke* case, those plaintiffs made detailed allegations regarding the allegedly unlawful policies at issue, namely that the defendant's policy systematically deprived the plaintiffs of overtime pay for off-the-clock work. 370 F. Supp. 2d 601, 606 (S.D. Tex. 2005). The plaintiffs in that case had sufficiently sought notice as to a single job category, on a single floor, at a single facility for employees who were all hourly, non-exempt employees, and most importantly, the court found, all potential plaintiffs were alleged to have been subject to the same practices and to have performed the same type of unpaid job tasks. *Id*. That is not the case here.

Here, there are numerous job categories represented. Most of the declarants are CSRs, although none describe their job duties.[19] The named Plaintiffs held numerous job titles, none of which during the relevant time period was a CSR,[20] and performed varying job tasks. None of the potential plaintiffs claim to be subject to the same FLSA violating policy. In fact, none claim an FLSA violation at all. What is more, with regard to this particular class, there has been no evidence submitted by any employee who can attest to being subject to any FLSA violating policy or

---

[19] Alexandria Disney, Kenya McNair, Whitney Ware, and Betty Lee Young, and were all CSRs. [69-9, 10, 11, 12]. Rosa Belara Young's affidavit states she worked as a CSR, but her declaration states she was a temporary CSR. [69-12]. Cedric Dallas states only that he was an employee. [69-8]. Carl E. Johnson states he was a supervisor. [69-12].

[20] Plaintiffs have submitted no evidence as to what their job titles and duties were. In the deposition excerpt submitted by Plaintiffs, Hubbard states only that she worked at GDIT from June 2013-June 2017—not what her title was. [69-1] 19:1-4. GDIT, however, introduced testimony and documentation that in the past three years since May 2015 (assuming without deciding that three years is the appropriate look back period), Hubbard was a Quality Specialist, classified as exempt from October 2013 to December 2015 when she became an acting Supervisor, where she supervised a team of CSRs. [80-11] 45:16-18; 64:10-30; 50:16-51:13. She then returned to being a Quality Specialist in March 2016, which had been converted to an hourly position, which was the last position she held. [80-11] 65:15-21; 80:20-24; [80-16]. GDIT also presented evidence regarding Hollingsworth's employment. She initially began as a CCO CSR, but in August 2014 she moved to ISG, providing support to CSRs and handling escalated phone calls. [80-10] 36:3-37:18. In October 2016, she became an acting supervisor and oversaw a team of CSRs. [80-10] 39:24-40:7; 41:1-7; 1:23-43:17. In June 2017, she went back to ISG, but soon became a Trainer/Instructor, where she stayed until late 2017 when she returned again to ISG, which was the last position she held. [80-10] 44:8-45:5;[80-10] 48:4-50:2; 15:22-16:1.

procedure at the Waco facility. As such, *Clarke* does not support Plaintiffs' attempt to seek conditional certification.

### 2. Other Standards

Considering the foregoing analysis, Plaintiffs fail to establish that certification is warranted under any of the other standards as well. As mentioned, some courts have found that "a plaintiff must make a minimal showing that (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *See, e.g., Santinac*, 107 F. Supp. 3d at 615; *McKnight*, 756 F. Supp. 2d at 801; *Harris*, 2014 WL 457913, at * 2 Even under this standard, particularly with regard to the second prong, Plaintiffs request for certification fails. There is simply no comparison of the named Plaintiffs to the opt-in plaintiffs. As thoroughly explained above, given the claims asserted in the Amended Complaint, there is an insufficient factual showing that the plaintiffs were all subject to the same conditions that resulted in uncompensated overtime pay. There are misclassification claims asserted in the Amended Complaint, but no one claims to have been misclassified as exempt.

The result is the same with regard to the articulated standard in wage and hour cases. As noted, in these types of cases to be "similarly situated" for elective certification purposes the proposed class plaintiffs must be "similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Mathis v. Stuart Petroleum Testers, Inc.*, No. 5:16-CV-094-RP, 2016 WL 4533271, at *2 (W.D. Tex. Aug. 29, 2016). Plaintiffs never address how they are similarly situated to the other GDIT employees at either the Hattiesburg or the Waco locations. As noted above, not one declarant indicates whether they are hourly, exempt or non-exempt, full-

time or part-time, or what their job requirements are.[21]  As can be seen from the facts set forth in footnotes 19 and 20 above, the named Plaintiffs did not hold the same positions, and neither of them held the same position as the opt-in plaintiffs. Accordingly, Plaintiffs fail to make the minimal factual showing that would warrant conditional certification under this standard as well.

## III.     CONCLUSION

Based on the foregoing, the Court concludes that Plaintiffs are inappropriately seeking certification of a class that does not match the allegations of the Amended Complaint, and therefore, the Court denies certification on that basis.  Additionally, following a thorough analysis, the Court further concludes that Plaintiffs have failed to meet their burden of proof under any of the lenient standards at this notice stage. Accordingly, it is hereby ORDERED that the Plaintiffs' Motion to Certify Collective Action Class [69] is DENIED.

SO ORDERED AND ADJUDGED this 2nd day of July 2019.


/s/ Keith Starrett_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE

---

[21]  Except for the Youngs. *See supra* n. 13.